■ BERKELEY ASSOCIATES Co., Respondent, v ARMAND DI NOLFI et al., Appellants.—Order of the Appellate Term, First Department, entered May 9, 1985, which affirmed the order of Civil Court, New York County (Charles Ramos, J.), entered November 1, 1984, denying respondent-appellant Armand Di Nolfi's motion to vacate a final judgment of eviction entered upon his default in August 1980, is reversed, on the law, the motion to vacate the default judgment is granted and the petition of the landlord Berkeley Associates Co. dismissed for lack of subject matter and personal jurisdiction, with costs.

From 1974 to August 1980, appellant Dr. Di Nolfi maintained his medical office in a building owned by Berkeley Associates Co. Prior to his lease expiring on May 31, 1980, the building's managing agent offered Di Nolfi a new two-year lease at a monthly rate of $1,100, provided Dr. Di Nolfi executed and returned the enclosed lease by April 15, 1980. Di Nolfi did not do so but instead sent to the landlord a check for $1,100 to cover his $750 rent for May and to raise his security deposit to $1,100. By letter dated May 22, 1980, the managing agent informed Di Nolfi that the landlord did not intend to renew his lease but had agreed to give Di Nolfi six months' time in which to relocate and offered a rental of $1,100 per month during that period. Di Nolfi failed to respond but sent a check, dated June 5, 1980, for $1,100 for the June 1980 rent and later sent a check for $1,100, dated July 20, 1980, for the July 1980 rent. By letter dated July 30, 1980, Di Nolfi was advised that the checks would not be cashed and that legal proceedings would be commenced against him. This communication apparently crossed in the mail with Di Nolfi's rent check for August, which, Di Nolfi was informed, by letter dated August 11, 1980, would not be cashed.

On August 1, 1980, Di Nolfi went on vacation, apparently leaving before receiving the July 30 letter, and returned on August 27, 1980 to learn that in that short period of time a

warrant of eviction had been executed. On August 5, 1980, a process server went to Di Nolfi's office. Not finding anyone there, he affixed on the entrance door copies of a notice and petition for a holdover summary eviction proceeding, returnable August 12. On the next day, he mailed copies to Di Nolfi's office address. An affidavit of service was filed with Civil Court, New York County, on August 11, 1980. The landlord was awarded judgment of possession on August 15, 1980, upon the tenant's default and after an inquest. On August 26, 1980, the warrant of eviction was executed, and Di Nolfi's equipment, supplies, furniture and records were removed from the premises.

On June 23, 1982, Di Nolfi commenced an action against the landlord and managing agent in Supreme Court, New York County, for wrongful eviction, abuse of process, and intentional infliction of severe mental distress. By order entered January 24, 1983, Justice Goldman denied Di Nolfi's motion for partial summary judgment and granted the landlord's cross motion to dismiss the wrongful eviction cause of action. The court rejected Di Nolfi's argument that a holdover, month-to-month tenancy had been created by the landlord's "acceptance" of rent checks after the expiration of the lease term. On appeal to this court, that order was affirmed, on the basis that Civil Court's August 15, 1980 judgment of eviction, awarding possession to the landlord, was a lawful mandate of the court and constituted a complete defense to Di Nolfi's cause of action for wrongful eviction. *(Dinolfi v Berkeley Assoc. Co.,* 98 AD2d 644.)

Ten months later, Di Nolfi moved Civil Court to vacate the August 15, 1980 judgment of eviction and dismiss the landlord's petition on the ground that the judgment was a nullity due to noncurable jurisdictional defects. Dr. Di Nolfi did not seek restoration to the premises, but only a vacatur of the judgment, so as to be able to pursue his wrongful eviction claim. Among his arguments, he urged that the Civil Court lacked subject matter and personal jurisdiction because the petition was returnable on August 12, 1980, only one day after the affidavit of service was filed (which action constituted completion of service under RPAPL 735 [2] [b]), in violation of the requirement of RPAPL 733 that the return date be between five and 12 days after service is completed.

By order of November 1, 1984, Judge Ramos denied tenant's motion to vacate the 1980 default judgment. On appeal to the Appellate Term, First Department, that order was affirmed

without opinion by order of May 9, 1985. On October 3, 1985, this court granted Di Nolfi leave to appeal.

Except for the issue of whether the provisions of RPAPL 733 were violated, which will be discussed below, we find that respondent-appellant's other contentions on appeal are without merit and thus do not address them. We also note that Civil Court did not appear to give serious consideration to Di Nolfi's procedural objections to the landlord's 1980 summary proceeding. This may have been on the theory that Di Nolfi, who had no meritorious substantive defense to the eviction, would have eventually been evicted, even if the August 1980 proceeding was dismissed on procedural grounds. However, such an approach neglects the fact that the sole purpose of this motion to vacate the default is to support Di Nolfi's claim for damages from a wrongful eviction due to the insufficient notice of eviction, which gave him an inadequate amount of time to locate an alternative place for his practice and in particular for his perishable drug supply, the loss of which alone cost him $50,000.

RPAPL 735 (2) (b) provides that service by nail and mail is rendered complete upon the filing of proof of service, which filing is to take place within three days of the nailing and mailing. The mailing in this case was effected on August 6, 1980. Since the third day after the mailing fell on a Saturday, the landlord filed the proof of service on the next succeeding business day, August 11, 1980. However, RPAPL 733 provides that the service of the notice and petition, which in this case was not complete until August 11, 1980, must be accomplished at least five and not more than 12 days before the return date. The return date, however, was August 12, 1980, only one day after service was completed. Pursuant to RPAPL 733, this matter should not have been made returnable until August 16, 1980, at the earliest. This difference of four days clearly prejudiced Di Nolfi, who arrived back at his office only one day after the warrant of eviction was executed. The extra four days would have made it very unlikely that the warrant of execution could have still been executed prior to Di Nolfi's return and would have given Di Nolfi time to defend himself against the eviction on the basis of this procedural defect.

It has been noted that "[a] summary proceeding is a special proceeding governed entirely by statute [citations omitted] and it is well established that there must be strict compliance with the statutory requirements to give the court jurisdiction [citations omitted]." (Goldman Bros. v Forester, 62 Misc 2d 812, 814-815.) Because Di Nolfi has a meritorious procedural de-

fense to the eviction, the motion to vacate the default judgment is granted and the petition dismissed for lack of personal and subject matter jurisdiction due to noncompliance with RPAPL 733. Concur—Carro, Lynch and Wallach, JJ.

Murphy, P. J., dissents in a memorandum as follows: It is the majority's position that although respondent's challenge to the August 1980 judgment of possession in petitioner's favor is absolutely without substantive merit, petitioner's failure to comply strictly with the procedures set forth by RPAPL 733 prejudiced respondent and requires vacatur of the above-mentioned judgment entered upon respondent's default. As a result of the judgment's vacatur, respondent is to be afforded an opportunity to commence a wrongful eviction action against petitioner.

It would seem to me that before a judgment of possession is vacated exclusively on procedural grounds for the sole purpose of allowing a cause of action for wrongful eviction, there should be some convincing showing that strict compliance with procedural requirements would have avoided the claimed harm. Here, respondent takes the position accepted by the majority, that, had the holdover petition been made returnable on August 16 as it should have, instead of August 12 as it was, the warrant of eviction probably would not have been executed until after respondent's return from Europe. In fact, the warrant was executed one day before respondent's return and he was, therefore, unable to take any measures to prevent the eviction which caused the interruption of his practice and the loss of some $50,000 in perishable drug supplies.

I cannot agree that petitioner's noncompliance with RPAPL 733 had the prejudicial effect respondent ascribes to it. Indeed, in complete conformity with the statutory requirements, petitioner might have made the petition returnable even earlier than it did. If, for example, the notice of petition and petition together with proof of service had been filed with the Court Clerk on August 6, the day on which the petition was mailed to respondent, the petition could have been made returnable on August 11, one day before it was actually noticed to be heard. Thus, the eviction might have been accomplished even more expeditiously than it was without violating any of the procedural requirements of RPAPL 733. Clearly, respondent cannot claim prejudice from petitioner's noncompliance with the statute when compliance would not necessarily have placed him in a better position, and might have actually hastened the complained-of harm.

In any event, the focus of the court's inquiry in the present

circumstances ought not to be upon whether the statute's technical requirements have been met, but upon whether as a result of any failure by petitioner respondent has been deprived of the notice to which he is entitled. Plainly, there was no deprivation of notice as a consequence of the RPAPL 733 defect cited by the majority. As has been found, the actual service upon respondent was entirely proper. Respondent's failure to abide strictly by the wholly ministerial requirements of RPAPL 733 could not have affected the notice afforded respondent one way or the other and might have been routinely cured by resort to the provisions of CCA 411. Respondent received no notice of the holdover proceeding because he was away, not because the petition was made returnable prematurely. Indeed, even if the petition had been made returnable on August 16, as it should have been, respondent would still have defaulted since it was not until August 27 that he returned to the United States and learned of the proceeding and consequent eviction. If anything, RPAPL 733 affords a tenant in the context of what is supposed to be a summary proceeding a minimal period from the completion of service to answer the petition and thereby prevent a default. It does not save the tenant from the consequences of a default once entered. Clearly, the early return date designated by petitioner made absolutely no difference in preventing respondent's default.

It is a possible, though, as pointed out above, not by any means a necessary incident of petitioner's compliance with RPAPL 733 that respondent might have arrived home in time to prevent or postpone the eviction. However, this outcome would appear to depend as much, if not more, upon respondent's travel agenda as upon respondent's strict observance of the statutory requirements. Surely, respondent cannot claim prejudice because he happened by chance to return home within four days of the eviction (the four-day period representing the time added to allow for a proper return date). By this same reasoning an affirmance would be required if respondent returned five or more days after the eviction. The point to be made is that respondent's unilateral decision to return home on a particular date should not be dispositive as to whether an action for wrongful eviction will lie.

It should be remembered that respondent was offered a lease renewal which he failed to execute and return in timely fashion, and that, thereafter, he was offered a six-month extension of his tenancy to afford him time to relocate, which offer he also failed to act upon. He then left for an extended

European vacation still occupying premises to which he ought to have known he had no right. Respondent's actions show little enough regard for the security of his practice and supplies, and still less for the legitimate interests of the landlord, who had a clear right to possession at the end of the lease term. It is then somewhat perplexing why, seizing upon a technical violation of the statute having no jurisdictional significance (cf. Eiler v North, 121 Misc 2d 539), and bearing no substantial causal relation to respondent's harm, we would set aside a judgment of possession for the sole purpose of allowing respondent to institute a wrongful eviction action.

Accordingly, I dissent and would affirm the order of Appellate Term.